NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

## IN RE TERMINATION OF PARENTAL RIGHTS AS TO E.V. and L.V.

No. 1 CA-JV 22-0198
FILED 2-7-2023

---

Appeal from the Superior Court in Maricopa County
No. JD41158
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Peter B. Swann[1] delivered the decision of the court, in which Presiding Judge Maria Elena Cruz and Judge Angela K. Paton joined.

---

**S W A N N**, Judge:

¶1        Matthew V. ("Father") appeals the juvenile court's order severing his parental rights to E.V. and L.V.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Father is the biological father of E.V. and L.V., and their biological mother is deceased.  In June 2021, the Department of Child Safety ("DCS") received a report alleging that Father was homeless, refusing help from services, and possibly abusing methamphetamine.  The next month, DCS and law enforcement located Father and the children at a motel.  Upon arrival, they heard the children begging Father to wake up.  Law enforcement entered the room and found Father unconscious, appearing to be under the influence, with a pipe containing an unknown substance next to him.  DCS took temporary custody of the children and filed a dependency petition.

¶3        In August 2021, Father appeared in court and contested the dependency.  After Father did not appear for the next two hearings, the juvenile court proceeded in his absence and adjudicated E.V. and L.V. to be dependent.  DCS referred Father for case management services, substance-abuse treatment and testing, parent-aide services, and supervised parenting time.  Father's referral for substance-abuse treatment closed out twice due to Father's lack of engagement. Father submitted a drug test only

---

[1]        Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court.  He retired effective November 28, 2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2022-162.

seven times throughout the entire case, even though DCS required him to test two times per week over a period of thirteen months. He had last tested in January 2022. The drug tests he did submit were positive for THC.

**¶4** Father's referrals for supervised visits closed out and reopened several times after he failed to engage in consistent supervised visits. Father has not visited with the children since January 2022. Father also failed to engage with other services DCS offered.

**¶5** DCS filed a motion for termination in May 2022, on the grounds of chronic substance abuse and nine months in an out-of-home placement. Father failed to appear without good cause at the July 2022 termination hearing. The DCS case manager testified about Father's lack of engagement with the services provided. After the hearing, the juvenile court terminated Father's parental rights on the grounds alleged.

**¶6** Father appeals.

## DISCUSSION

**¶7** "Parents have a fundamental right to raise their children as they see fit, but that right is not without limitation." *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001). To terminate a parent's rights, the juvenile court must find by clear and convincing evidence at least one of the grounds in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 42 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

**¶8** The juvenile court is in the best position to weigh the evidence, and we view the evidence in the light most favorable to supporting the court's decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We do not reweigh the evidence. *Id.* We will not disturb a juvenile court's decision absent an abuse of discretion or unless the court's findings of fact have no reasonable evidence to support them. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶9** The superior court terminated Father's parental rights under both A.R.S. § 8-533(B)(3), chronic substance abuse, and § (8)(a), nine months in an out-of-home placement. Both statutory grounds are "proxies for parental unfitness because they demonstrate a parent's inability 'to properly parent his/her child.'" *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 10 (2018) (citation omitted). Father contends that the record

contains insufficient evidence to support the parental unfitness necessary for termination of his parental rights under § 8-533(B)(3) and (8)(a). We disagree. Father does not challenge the juvenile court's finding that termination of his parental rights was in the best interests of the children. We therefore do not address whether severance was in the children's best interests. *See Michael J.*, 196 Ariz. at 249, ¶ 13.

I. REASONABLE EVIDENCE SUPPORTS THE COURT'S DETERMINATION THAT SEVERANCE WAS WARRANTED BASED ON FATHER'S CHRONIC SUBSTANCE ABUSE.

¶10        The termination ground under § 8-533(B)(3) requires "[t]hat the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." "[T]his section does not require that the parent be found unable to discharge *any* parental responsibilities but rather that the parent be unable to discharge the parental responsibilities." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378, ¶ 19 (App. 2010) (citation and internal quotation marks omitted). "Parental responsibilities" refers to the duties or obligations a parent has to his or her child. *Id.* at ¶ 20. The term does not include an exclusive set of factors but instead establishes a standard that allows trial judges flexibility to consider the unique circumstances of each case. *Id.*

¶11        Father contends that the record lacks sufficient evidence of his parental unfitness for being "unable to discharge parental responsibilities." The juvenile court found that "Father is unable to discharge his parental responsibilities because of a history of chronic substance abuse, of controlled substances and/or alcohol." The court stated, "[t]here are reasonable grounds to believe that it will continue for a prolonged, indeterminate period of time." The court also found Father's failure to submit drug tests throughout the case indicated that Father continued to use drugs. The record supports the court's findings.

¶12        Father has a history of chronic substance abuse, with a 2006 conviction for possession of methamphetamine. DCS referred Father to the service provider, Terros, for substance-abuse treatment. During Father's intake, he did not disclose his past methamphetamine use to the case manager. He did report that he first used alcohol at the age of twenty-one and marijuana at the age of sixteen. The staff at Terros diagnosed Father with alcohol use disorder and cannabis use disorder.

**¶13**        Father's failure to engage in substance-abuse testing or treatment suggests his chronic substance abuse will continue. *See id.* at 379, ¶ 29 ("Father's failure to remedy his drug abuse; despite knowing the loss of his children was imminent, is evidence he has not overcome his dependence on drugs and alcohol."). The first two referrals to Terros closed out due to Father's lack of engagement; DCS submitted a third request, which Terros denied. The case proceedings continued for about one year; during that time DCS required Father to test twice per week. He only tested seven times throughout the entire case, which means he missed at least seventy tests. The DCS case manager testified that Father displayed erratic behaviors consistent with substance abuse, and as of July 2022, he had not tested since January 26, 2022.

**¶14**        Father's chronic substance abuse threatens the children's safety. *See id.* at 378, ¶ 22 (attributing parent's failure to protect children from harm to his chronic substance abuse). When DCS initially located Father, they found him passed out, appearing to be under the influence, with drug paraphernalia next to him within reach of the children. The report to DCS stated that Father has left the children in the care of a homeless person and others while he partied, and the children's placement expressed concern that as a result, the children were willing to get into cars with strangers. DCS also received a report that Father and the children had been at known drug houses. The DCS case manager testified that Father's substance abuse presented a danger to his children due to his "erratic behaviors, . . . neglect as well as leaving paraphernalia within reach of them."

**¶15**        Father's chronic substance abuse also prevents him from the basic parental responsibility of providing for his children. In June 2021, Father and the children lived in a hotel, with Father's sole source of income coming from a Go Fund Me account. When DCS located the children, they appeared dirty, with scars on their bodies. Father had not enrolled the children in school. As of the termination hearing, Father still did not have a residence or a job to provide stability for the children.

**¶16**        Lastly, Father failed to maintain consistent visits with his children. Father had a parent aide, but after Father threatened the parent aide, this service closed out. DCS referred Father to other providers for supervised visits, but Father was inconsistent and did not put any effort into scheduling visits. Father has not had contact with the children since January 2022, even though his last referral for supervised visits remained open. Given Father's failure to engage in substance-abuse treatment or testing, the record contains sufficient evidence to support the court's

finding that Father is unable to discharge his parental responsibilities because of his history of chronic substance abuse.

## II. REASONABLE EVIDENCE SUPPORTS THE COURT'S DETERMINATION THAT SEVERANCE WAS WARRANTED BASED ON THE CHILDREN'S TIME IN CARE.

**¶17** The juvenile court only needs to find one statutory ground for severance. *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017). Here, Father's chronic substance abuse is a predicate to the nine months the children have spent in an out-of-home placement. The severance ground under § 8-533(B)(8)(a) requires that the child live in an out-of-home placement for a total period of nine months or longer and that "the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement" despite DCS's "diligent effort to provide appropriate reunification services."

**¶18** Father contends that the record lacks sufficient evidence of his parental unfitness for failing to "remedy the circumstances." The juvenile court found that "Father has substantially neglected or willfully refused to remedy the circumstances that caused the children to be in an out-of-home placement." The court stated Father was aware of the services offered to him and did not engage in them, which demonstrates some substantial neglect. The record supports the court's findings.

**¶19** DCS took custody of the children in July 2021, and the children were still under care at the time of the severance hearing in July 2022, a year-long period. As described in Section I, Father failed to engage in consistent substance-abuse testing, treatment, or visits with the children. Father's failure to treat his chronic substance abuse has resulted in his children continuing to stay in an out-of-home placement for over nine months. Accordingly, the evidence is sufficient for the juvenile court to conclude that Father has refused to remedy the circumstances that caused the children to be in an out-of-home placement.

**CONCLUSION**

¶20　　　　Reasonable evidence supports the juvenile court's order severing Father's parental rights to E.V. and L.V.  We therefore affirm.



AMY M. WOOD • Clerk of the Court
FILED:　AA

7